Hand-Delivered

FILED
CHARLOTTE, NC
MAY 28 2024
US DISTRICT COURT
WESTERN DISTRICT OF NC

# UNITED STATES DISTRICT COURT
## for the
## Western District of North Carolina

*************************************************************************

| | |
|---|---|
| Johnny E Miller<br>**Plaintiff**<br><br>v.<br><br>Charlotte Mecklenburg Schools (CMS), Crystal Hill, and Jacqueline Barone<br>**Defendants** | Case No. 3:24-cv-511-FDW<br><br>**Jury Trial Requested** |

*************************************************************************

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

**I.  The Parties to This Complaint**

  **A.  The Plaintiff**
    Johnny E. Miller
    1829 Paces River Ave.; Apt. 106
    City of Rock Hill_County of York
    South Carolina, 29732
    (803) 517-0378
    johnnymillerjohn@aol.com

  **B.  The Defendants**
    **Defendant No. 1**
    Charlotte Mecklenburg Schools (CMS)
    1901 Herbert Spaugh Ln
    City of Charlotte_County of Mecklenburg
    North Carolina, 28208
    (980) 343-3000
    ogc@cms.k12.nc.us

**Defendant No. 2**
Dr. Crystal Hill
CMS Superintendent
4421 Stuart Andrew Blvd. Suite 100
City of Charlotte_County of Mecklenburg
North Carolina, 28217
(980) 343-3000
crystal.hill@cms.k12.nc.us

**Defendant No. 3**
Dr. Jacqueline Barone
Principal of Piedmont Middle IB School
1241 E. 10th Street
City of Charlotte_County of Mecklenburg
North Carolina, 28204
(980) 343-5435
jackie.barone@cms.k12.nc.us

## C. Place of Employment

The address at which I was employed by the defendants is as follows:

Charlotte Mecklenburg Schools
Piedmont Middle IB School
1241 E. 10th Street
City of Charlotte_County of Mecklenburg
North Carolina, 28204
(980) 343-5435

## II. Basis of Jurisdiction

This action is brought for discrimination in employment pursuant to the following:

1. Title VII of the Civil Rights Act of 1964, as codified. 42 U.S.C. §§ 2000e to 2000e-17 (equal pay, race, color, gender, religion, national origin).

2. Equal Pay/Compensation taken from the Equal Employment Opportunity Commission (EEOC) "Discrimination by Type." The Equal Pay Act 0f 1963 requires that men and women in the same workplace be given equal pay for equal work.

3. The EEOC laws prohibit punishing job applicants or employees for asserting their rights to be free from employment discrimination including harassment, known as "retaliation." Asserting these EEOC rights is called "protected activity," and it can take many forms. For example, it is unlawful to retaliate against applicants or employees for filing or being a witness in an EEO charge, complaint, investigation, or lawsuit….and communicating with a supervisor or manager about employment discrimination, including harassment. (Taken from the EEOC website: https://www.eeoc.gov/discrimination-type.)

4. **Other Federal Law** The United States Department of Education Office of Civil Rights enforces several Federal civil rights laws that prohibit discrimination in schools. A complaint of discrimination can be filed by anyone who believes that an education institution that receives Federal financial assistance has discriminated against someone on the basis of race, color, national origin, sex, disability, or age. (Taken from the US Department of Education website: https://www2.ed.gov/about/offices/list/ocr/aboutocr.html .)

5. **Relevant State Law** The North Carolina Retaliatory Employment Discrimination Act (REDA) prohibits employers from retaliating against employees who in good faith engage in certain protected activities such as filing or threatening to file a complaint for disparate treatment concerning wages, or employer discrimination against an employee who is suffering domestic abuse.

6. **Relevant city or county laws** Charlotte City Code, Chapter 12, Article IV, Section 12_Employment Protectection_Effective January 1, 2022, under the new employment protections, it is unlawful for an employer to fail or refuse to hire a person, or otherwise discriminate against them in any employment matter, because of their race, color, gender, religion, national origin, ethnicity, age, familial status, sexual orientation, gender identity,

Page 3 of 9

Case 3:24-cv-00511-FDW-DCK   Document 1   Filed 05/28/24   Page 3 of 10

gender expression, veteran status, pregnancy, natural hairstyle or disability. The ordinance applies to employers of all sizes in the city of Charlotte.

III. **Statement of Claim**

    A. The discriminatory conduct of which I complain in this action includes the following:

      1. Termination of my employment

      2. Unequal terms and conditions of my employment concerning pay

      3. Retaliation

      4. **Other acts** Denigration and maligning of my character, and underminding my authority with students and their parents

    B. It is my best recollection that the alleged discriminatory acts occurred on the dates as follows:

      1. From December 1, 2011 when I was initially hired by CMS until I was involuntarily terminated on March 28, 2024. I was hired with a Master's Degree directly related to the subject matter that I was hired to teach (Social Studies), but was refused Master's pay the entire duration of my employment with CMS.

      2. March 28, 2024 when I was involuntarily terminated in retaliation for the ongoing complaints I filed against CMS and Dr. Jackie Barone.

      3. On or about October 1, 2023, I filed a discrimination grievance with CMS against Dr. Jacqueline Barone based on race, gender (sex), and retaliation. In response to the grievance, CMS accused me of harassing Dr. Barone via my grievance based on gender (sex) and age because I had to mention her being a middle-aged white female to set the context of Dr. Barone's discrimination against me as an older black male.

4. On or about January 27, 2023, I was physically assaulted by a fellow co-worker (another school teacher) while at work at Piedmont Middle School. This assault was caught on camera in front of more than twenty (20) witnesses, and a report was filed concerning the incident with the Charlotte Mecklenburg Police Department. Yet, no disciplinary actions that I know of were ever taken against the co-worker for assaulting me.

5. Approximately a month prior to the assault noted above in number four, I was cursed using the "F" word in a 6th grade faculty meeting in front of the entire 6th grade staff present by a co-worker who is the natural born sister to the co-worker who assaulted me. Again, there were no disciplinary actions taken against the co-worker that I know of for cursing me using the "F" word.

6. On or about November 15, 2018, my grade level supervisor and assistant principal gave me a very bad evaluation, that he told me Dr. Barone instructed him to write. In response, I wrote a twenty-six (26) page letter outlining the discrimination and denigration I had been subject to at the hands of Dr. Barone since she became Principal of Piedmont, after I was hired at Piedmont by Ms. Dee Gardner. This 26 page letter was submitted to CMS, yet the discrimination and denigration not only continued, but escalated.

7. On or about October 25, 2022, I submitted a letter of grievance to CMS again outlining discrimination and denigration I had been subject to at the hands of Dr. Barone including her denying me Master's Pay and denying mostly black sixth grade students from going on a field trip that I had completely organized and secured funding for, when just a short time before she allowed mostly white sixth grade students to go on a field trip while the mostly black students had to stay at the school. My 6th grade level supervisor called the matter a clear case of biasness in a 6th grade faculty meeting in front of all the 6th grade faculty present.

8. From the time Dr. Barone became the Principle of Piedmont in or around 2012-2013 until I was terminated on March 28, 2024, she constantly harassed and maligned me, and discriminated against me based on race, sex, equal pay, and retaliation.

C. I believe defendant No. 1 (CMS) discriminated against me from December 1, 2011 when I was initially hired until CMS fired me on March 28, 2024 by not ever giving me Master's Pay and by ignoring the long list of complaints and grievances that I alleged against Dr. Barone.

I believe defendant No. 2 (Dr. Crystal Hill) discriminated against me by denigrating and maligning my character by falsely stating that my behavior was unacceptable, my character was substandard, I lacked integrity to be a good role model for my students, and I had "insufficient honesty, integrity, and ethics expected of a teacher." Dr. Hill made these false statements in the letter she signed recommending I be terminated from CMS as a teacher. Dr. Hill's recommendation that I be terminated was accepted and I was terminated on March 28, 2024.

I believe defendant No. 3 (Dr. Jacqueline Barone) discriminated against me from the time she became the Principle of Piedmont in or around 2012-2013 until I was terminated on March 28, 2024 in many ways…..both subtle and overt.

D. Defendants discriminated against me based on my:

1. Race
2. Color
3. gender/sex
4. filing complaints and grievances (retaliation)

E. The facts of my case are as follows.

It is undisputed that I held a Master's Degree in Theological Studies from Duke University before I was hired by CMS on December 1, 2011 as a Social Studies teacher. It is undisputed that I was hired by CMS on December 1, 2011 as a Social Studies teacher. It is undisputed that I taught Social Studies at CMS in the classroom every school day from the time I was hired on December 1, 2011 until the end of the school year in June of 2012. It is undisputed that Ms. Adriane Murray, an Education Licensure Specialist for the NC Department of Public Instruction, told the following to the Petitioner in a telephone conversation on March 7, 2023;

> [The] "Master's Degree in Theological Studies from Duke University which [the Plaintiff] received in 2008 clearly seems to meet the criterion for Master's Pay Level to teach Social Studies in the CMS system."

However, Ms. Murray said this is a decision that CMS must make, not NCDPI.

It is undisputed that for the entire duration of my employment at Charlotte Mecklenburg Schools which was continuous from December 1, 2011 until March 28, 2024, I never received Master's Pay from CMS even though I held a Master's Degree in Theological Studies which is directly related to Social Studies. I received pay at the Bachelor's Level pay scale for the entire duration of my employment at CMS. It is undisputed that I officially and professionally petitioned CMS for pay at the Master's Level pay scale more than once, but was denied Master's pay by CMS.

The statues that governed a teacher receiving Master's Pay at CMS at the time I was hired are as follows:

> 16 N.C.A.C. 06C .0369......"The North Carolina Department of Public Instruction (NCDPI) shall authorize salary on the master's degree level salary schedule for professional educators who hold master's degrees or advanced degrees that do not lead to a professional educator license if the following criteria are met:
> (1) the master's or higher-level degree is from a regionally accredited Educator Preparation Program (EPP);
> (2) the master's or higher-level degree is in an education or subject area directly related to an existing area of licensure and current teaching assignment or instructional support responsibilities; and
> (3) the educator's assignment for 50 percent or more of the school day is in the area for which the master's or higher-level degree applies.

I clearly beyond any doubts met and meet the requirements to receive Master's Pay, but was denied the right to do so by CMS.

At the beginning of the 2012-2013 school year, I began teaching Science at Piedmont Middle IB School after having taught Social Studies the previous year. Ms. Dee Gardner, who was the Principal at Piedmont at that time, recruited and hired me. The next year Ms. Gardner retired and Dr. Jacqueline Barone became Principal. Dr. Barone immediately began discriminating against

me as soon as she became Principal, and the discrimination continued and escalated until I was terminated on March 28, 2024. CMS and Dr. Crystal Hill both supported and perpetuated the discrimination against me by doing nothing about it as Dr. Barone's superiors.

## IV. Exhaustion of Federal Administrative Remedies

A. It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission regarding the defendant's alleged discriminatory conduct on **April 26, 2024 (Charge No. 430-2024-02348) and February 24, 2023 (Charge No. 430-2023-01388)**.

B. The Equal Employment Opportunity Commission issued a Notice of Right to Sue letter, which I received on **April 30, 2024 (Charge No. 430-2024-02348) and on March 14, 2023 (Charge No. 430-2023-01388)**. <u>**Both Notices are attached at the end of this complaint.**</u>

## V. Relief

I ask this honorable court to order I be paid $1,000,000.00 (one-million dollars) and that the status of the ending of my CMS employment be changed from "involuntary termination" to "retirement." I'll be 62 years old in September of this year. The one-million dollars would entail $70,000.00 (seventy thousand dollars) in relief for back wages for not receiving Master's Pay, punitive damages for slander and defamation of character, for pain and suffering for the physical assault, and being made subject to continuous systematic and patterned harassment, discrimination, and disparate treatment the entire time that Dr. Barone was my Principal at Piedmont based on race, sex, and retaliation. Dr. Barone's prolonged harassment, denigration, and mistreatment created a toxic and hostile work environment for me at Piedmont for over eleven years. The situation caused me to have to undergo medical treatment and counseling for anxiety.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is

supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) has evidentiary support for its factual contentions or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: May 28, 2024

Signature of Plaintiff: *Johnny E. Miller*

Printed Name of Plaintiff: Johnny E. Miller

Page 9 of 9

Case 3:24-cv-00511-FDW-DCK   Document 1   Filed 05/28/24   Page 9 of 10

# UNITED STATES DISTRICT COURT
## for the
## Western District of North Carolina

*************************************************************************

Johnny E Miller
**Plaintiff**

v.

Charlotte Mecklenburg Schools (CMS), Crystal Hill, and Jacqueline Barone
**Defendants**

Case No. 3:24-cv-511

**Jury Trial Requested**

*************************************************************************

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document (**COMPLAINT FOR EMPLOYMENT DISCRIMINATION**) was mailed via the US Postal Service and emailed to the following individuals at the physical and email addresses below:

Charlotte Mecklenburg Schools
1901 Herbert Spaugh Ln
Charlotte, North Carolina 28208
ogc@cms.k12.nc.us

Dr. Crystal Hill
4421 Stuart Andrew Blvd. Suite 100
Charlotte, North Carolina 28214
crystal.hill@cms.k12.nc.us

Dr. Jacqueline Barone
1241 E. 10th Street
Charlotte, North Carolina 28204
jackie.barone@cms.k12.nc.us

This 28th day of May, 2024.

_Johnny E. Miller_
Plaintiff

_Johnny E. Miller_