# IN THE UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
### Civil Action No. 3:24-cv-00511-FDW

| | |
|---|---|
| **JOHNNY E. MILLER,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**CHARLOTTE-MECKLENBURG BOARD OF EDUCATION; DR. CRYSTAL HILL,** individually and in her capacity as Superintendent of Charlotte Mecklenburg Schools**; DR. JACKIE BARONE,** individually and in her capacity as Principal of Piedmont Middle School; and **RACHEL TAPIA,** individually and in her capacity as a Teacher at Piedmont Middle School,<br><br>     **Defendants.** | **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

NOW COMES Defendants, Charlotte-Mecklenburg Board of Education ("Defendant Board"), Dr. Crystal Hill ("Defendant Hill"), and Dr. Jacqueline Barone ("Defendant Barone"), through undersigned counsel, pursuant to Local Rule 7.1(C), Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure submit this Memorandum in Support of Motion to Dismiss Plaintiff's Second Amended Complaint.

## SUMMARY OF ARGUMENTS

Even accepting every allegation in the Second Amended Complaint as true, Plaintiff still fails as a matter of law to state a viable claim against these Defendants. This case is not about whether Plaintiff believes he was treated unfairly. It is about whether he has plausibly alleged legally cognizable claims that overcome jurisdictional bars, immunity doctrines, and federal pleading standards. For the following reasons, he has not.

1

1. Governmental immunity bars all state-law tort claims against the Board, and Plaintiff's conclusory allegation of waiver is unsupported by any facts establishing coverage;

2. Public official immunity bars all state-law claims against Defendants Hill and Barone because Plaintiff pleads only legal conclusions of malice, corruption, and conduct outside the scope of their authority;

3. Section 1983 claims fail because Plaintiff does not plausibly allege personal involvement sufficient to show individual liability or facts supporting a constitutional violation;

4. Qualified immunity independently warrants dismissal as Plaintiff fails to show any clearly established right violated by discretionary employment decisions based;

5. Title VII and Section 1981 claims fail as a matter of law and lack comparator or factual support.

## RELEVANT FACTS

For the purposes of this Motion to Dismiss and Supporting Memorandum only, Defendants hereby adopt Plaintiffs' factual allegations as alleged in their Complaint.

## PROCEDURAL HISTORY

On May 28, 2024, Plaintiff filed this instant matter against Charlotte-Mecklenburg Schools, Superintendent Hill, and Principal Jacqueline Barone in federal court alleging discrimination in employment pursuant to Title VII of the Civil Rights Act of 1964, Equal Pay Act, North Carolina Retaliatory Employment Discrimination Act ("NC REDA"), and the Charlotte City Code. After a series of attempts at service, Plaintiff was able to effectuate service on all Defendants, and on November 11, 2024, Defendants filed their Answer.

On January 31, 2025, Defendants moved this Court to dismiss Plaintiff's Amended Complaint based in part for failure to state a claim. Plaintiff opposed Defendants' motions. On

May 14, 2025, Plaintiff requested leave to amend the Amended Complaint, which this Court permitted on March 2, 2026.

On March 18, 2026, Plaintiff filed his Second Amended Complaint against the Board, Superintendent Hill, Principal Barone, and Rachel Tapia. Plaintiff alleges violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 based on race discrimination, gender discrimination, violation of the Equal Pay Act, hostile work environment, retaliation, and violation of 42 U.S.C. § 1983. Plaintiff also alleges state law claims of assault and battery, negligent supervision and retention, intentional and/or negligent infliction of emotional distress against the Board and individual defendants in their individual capacities only. On Defendant Board, Hill and Barone filed their answer on April 1, 2026. Upon information and belief, Defendant Rachel Tapia has not been served with a summons and complaint in accordance with Rule 4.

## STANDARD OF REVIEW

### 1. Federal Rule of Civil Procedure 12(b)(1)

Rule 12(b)(1) authorizes dismissal for lack of subject matter jurisdiction. *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Mayor & City Council of Balt. v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019). Subject matter jurisdiction challenges may proceed in two ways: a facial challenge or a factual challenge. *Id.* A facial challenge asserts "that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction." *Id.*

### 2. Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) motions test the sufficiency of a complaint; however, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *Cooper v.*

3

*Balt. Gas & Elec. Co.*, No. 1:23-cv-03116-JRR, 2024 U.S. Dist. LEXIS 146349, at \*7 (D. Md. Aug. 16, 2024) (*citing Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). In order to survive a 12(b)(6) motion to dismiss, a complaint must contain more than mere legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, a Rule 12(b)(6) motion should be granted if, after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (internal citation and quotations omitted).

Additionally, "[i]n addition to integral and authentic exhibits, on a 12(b)(6) motion the court may properly take judicial notice of matters of public record." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). "In employment discrimination cases, courts often take judicial notice of EEOC charges and EEOC decisions." *Campbell v. Mayorkas*, 3:20-cv-697-MOC, 2021 U.S. Dist. LEXIS 102205, 2021 WL 2210895, at \*1 n.3 (W.D.N.C. July 1, 2021).

Plaintiff asserts in his Second Amended Complaint that Defendants Hill and Barone are sued in their official capacity with respect to federal claims only. Dkt. No. 44, ⁋⁋ 10, 11. However, in introducing Count V, Plaintiff states that the 42 U.S.C. § 1983 claim is against individual defendants in their individual capacities. Dkt. No. 44, pg. 20. As such, Defendants respond to Second Amended Complaint according to Count V's specific designation in regard to capacity and treat Count I, II, and III as against Defendants Hill and Barone in their official capacity.

## ARGUMENT

### I. GOVERNMENTAL IMMUNITY BARS ALL STATE-LAW CLAIMS AGAINST THE BOARD

4

The governmental immunity defense under North Carolina law presents a question of jurisdiction, either subject matter or personal jurisdiction. *Teachy v. Coble Dairies, Inc.*, 293 S.E.2d 182, 184 (N.C. 1982); *Green v. Kearney,* 690 S.E.2d 755 (N.C. App. Ct. 2010); *Frye v. Brunswick Cnty. Bd. of Educ.*, 612 F. Supp. 2d 694, 701 (E.D.N.C. 2009). Under the doctrine of governmental immunity, a local government unit is immune from suit for the negligence of its employees in the exercise of a governmental function, absent some waiver of immunity. *Providence Volunteer Fire Dep't, Inc. v. Town of Weddington*, 382 N.C. 199, 212 (2022) (cleaned up). North Carolina boards of education are entitled to governmental immunity from lawsuits that allege tortious or negligent conduct unless the board waives its governmental immunity. *Magana v. Charlotte-Mecklenburg Bd. of Educ.*, 183 N.C. App. 146, 148, 645 S.E.2d 91, 92-93 (2007) (holding "with respect to immunity, a county board of education is a governmental agency, and is therefore not liable in a tort or negligence action except to the extent that it has waived its governmental immunity pursuant to statutory authority."); *see also* N.C. Gen. Stat. §115C-42. A school board's governmental immunity is not just protection from liability, but immunity from suit that deprives a court of jurisdiction to hear a claim against it. *Magana*, 183 N.C. App. at 147, 645 S.E. 2d. at 92. When a local board has not waived its immunity, governmental immunity is a complete defense. *Id*. at 149, 645 S.E.2d at 93.

Plaintiff's tort-based claims (Counts VI-VIII) fail at the threshold because governmental immunity deprives this Court of jurisdiction. Critically, Plaintiff's own pleading acknowledges that any waiver is only "to the extent immunity is waived N.C. Gen. Stat. § 115C-42." *See* Dkt. No. 44, ¶¶ 103, 115, 124. Plaintiff fails to allege any covered loss, any applicable policy, or any exhaustion of the self-insured retention. This omission is fatal.

### A.  The Board Did Not Waive Governmental Immunity

Notwithstanding the above, Defendant Board has not waived governmental immunity through the purchase of liability insurance pursuant to N.C. Gen. Stat. § 115C-42. While a local board of education may waive its governmental immunity by "securing liability insurance," the purchase of insurance alone is not enough to waive governmental immunity. *Beatty v. Charlotte-Mecklenburg Bd. of Educ.*, 99 N.C. App. 753, 755, 394 S.E.2d 242, 244 (1990) (holding "[t]he statute makes clear that unless the negligence or tort is covered by the insurance policy, sovereign immunity has not been waived by the board or its agents.") Application of N.C. Gen. Stat. §115C-42 is construed strictly against waiver. *Id*. at 149, 645 S.E.2d at 93. Even if the Board purchased insurance, immunity is only waived "to the extent that said board of education is indemnified by insurance for such negligence or tort." N.C. Gen. Stat. §115C-42. Thus, immunity is waived only if the Board had purchased insurance that provided coverage for Plaintiff's claims. *See Magana* at 183 N.C. App. at 148, 645 S.E.2d at 92-93 (where plaintiff's claims did not trigger coverage by school board's excess insurance policy, board did not waive immunity); *Overcash v. Statesville Cty Bd. Of Educ.*, 83 N.C. App. 21, 26, 348 S.E.2d 524, 527 (1986).

The holding in *Magana* controls the disposition of this case in favor of Defendant Board. In *Magana*, plaintiffs sued this same Defendant Board and its employees for negligence related to physical injuries suffered by a minor plaintiff while at school. *Id*. at 147, 645 S.E.2d at 91. In support of its motion, the Board provided the affidavit of the Risk Officer for the City of Charlotte,[1] which established that the Board was self-insured for up to $1,000,000 at the time of the alleged incident, in addition to having a general liability excess insurance policy. *Id*. The excess policy clearly stated it was "not intended by the insured to waive its governmental immunity" under the

---

[1] The Risk Officer for the City of Charlotte administers the insurance and self-insurance retention programs for the Board. *See Magana* at 147.

statute. *Id*. at 147, 148, 645 S.E.2d at 91, 93. Furthermore, the policy only covered the losses when "the insured's legal obligation to pay damages to which this insurance applies has been determined, and: (1) the amount of such damages is greater than . . . [$1,000,000], and (2) the insured has paid . . . [$1,000,000] to the claimant…." *Id.* at 148, 645 S.E.2d at 93. Therefore, the policy in *Magana* was "contingent upon the Board's liability for the first $1,000,000 of any damage award." *Id*. In affirming summary judgment for the Board, the North Carolina Court of Appeals held that the Board did not waive immunity because there was no insurance coverage for plaintiff's state tort claim. *Id*. at 149, 645 S.E.2d at 93. Specifically, the court held "since the board has statutory immunity from liability for tort claims, it cannot be required to pay any part of the $1,000,000 self-insured amount and, therefore, the excess policy will provide no indemnification." *Id*. Since there was no coverage at all, the Board did not waive its immunity through the purchase of insurance. *Id.*

There is no difference between the claims, or the applicable insurance policies, raised in the present case and those previously deciding this issue. Here, Defendant Board is immune from Plaintiff's tort and negligence claims because its policies of insurance do not cover such claims. As in *Magana*, an affidavit by the Chief Risk Officer for the City of Charlotte has been submitted to court (*See* Aff. Sanchez), which confirms that at the time of the allegations in the Second Amended Complaint, the Board had a self-insured retention of up to $1,000,000 and retains immunity for that amount. (*See* Aff. Sanchez, ¶ 5). While the Board has excess insurance policies covering the period in question, those policies contain specific provisions stating that coverage under the policy does not "waive its governmental immunity as allowed by North Carolina General Statutes §115C-42 . . .", just as in *Magana*. (Compare Exhibit A, p. 13) with *Magana* at 147, 148, 645 S.E.2d at 91, 93.

In sum, the excess policy presented in this case and the policy in *Magana* contain the same legal trigger: Defendant Board must be liable for, and actually pay, the first $1,000,000 of any claim before the insurance carrier is obligated to indemnify the Defendant Board. Here, Defendant Board has paid no money for the tort claims in this action. (Aff. Sanchez, ¶ 19). Thus, the insurance carrier will provide no indemnification. Federal and State Courts have repeatedly upheld, through the process outlined above, that Defendant Board has not waived its governmental immunity. *Doe v. Charlotte-Mecklenburg Bd. of Educ.*, 222 N.C. App. 359, 362, 731 S.E.2d 245, 247 (2012) (affirming dismissal of alleged tort claims against Board because Board "had not waived immunity by the purchase of liability insurance"); *Irving v. Charlotte-Mecklenburg Bd. of Educ.*, 230 N.C. App 140, 142, 752 S.E.2d 256, 258 (2013) (unpublished) (Board's excess policies were not triggered until the Board first paid the entire amount of the self-insured retention policy; thus governmental immunity was not waived); *Grier v. Gray, Charlotte-Mecklenburg Bd. of Educ*, No. 3:17-CV-00486-FDW-DSC 2018 U.S. Dist. LEXIS 165320 \*10-12 (W.D.N.C. Sept. 2018); *R.M. v. Charlotte-Mecklenburg Bd. of Educ.*, No. 3:16-CV00528-GCM 2017 U.S. Dist. LEXIS 73582 \*8-10 (W.D.N.C. May 15, 2017); and *Collum v. Charlotte-Mecklenburg Bd. of Educ.*, No. 3:07cv534-RJC-DSC, 2010 U.S. Dist. LEXIS 15824 \*6 (W.D.N.C. Feb. 23, 2010). For those reasons, the Plaintiff's state law negligence claims against Defendant Board should be dismissed with prejudice.

### B. Governmental Immunity Also Bars Plaintiff's State-Law Claims Pursuant to Respondeat Superior

Plaintiff attempts to impose liability through *respondeat superior*; however, that theory fails independently because governmental immunity also bars vicarious liability claims. While, "[t]he doctrine of *respondeat superior* generally allows an employer . . . to be held vicariously liable for tortious acts committed by an employee (sometimes referred to as an 'agent' in this context) acting

within the scope of his employment;" however, "the defense of governmental immunity applies to bar [a] Plaintiff's claim[s] . . . under the doctrine of *respondeat superior*." *Wilkerson v. Duke Univ.*, 229 N.C. App. 670, 677 (2013); *Hart v. Brienza*, 246 N.C. App. 426, 434 (2016). Therefore, when an employee of a school board is accused of tortious conduct, such conduct "…may not be imputed to the employer on the principle of *respondeat superior* when the employer is clothed in governmental immunity." *Meyer v. Wall*, 347 N.C. 97, 113 (1997) (citing *Smith v. Hefner*, 235 N.C. 1, 7 (1952)). Accordingly, Plaintiff's state-law claims against Defendant Board should be dismissed with prejudice.

## II.     PUBLIC OFFICIAL IMMUNITY BARS THE STATE-LAW CLAIMS AGAINST INDIVIDUAL DEFENDANTS

Plaintiff's state-law claims against Defendants Hill and Barone arise entirely from personnel and supervisory decisions, quintessential discretionary acts protected by public official immunity. The defense of public official immunity is a derivative form of governmental immunity. *Epps v. Duke Univ., Inc.*, 122 N.C. App. 198, 201, 468 S.E.2d 846, 849 (citations and internal quotation marks omitted). Similar to governmental immunity, public official immunity is an immunity from suit, not merely from liability. *Bailey v. Kennedy*, 349 F.3d 731, 738 (4th Cir. 2003). The purpose of public official immunity doctrine is twofold: first, public official immunity promotes the "fearless, vigorous, and effective administration of government policies[,]" and second, the protection "dampens trepidation about personal liability that may deter competent people from taking office." *Id.*" *Estate of Graham v. Lambert*, 385 N.C. 644, 654 (2024). Immunity serves to stem the tide of litigation, and "North Carolina has chosen to tolerate inevitable mistakes in order to promote fearless, vigorous, and effective administration of policies of government." *R.A. v. Johnson*, 36 F.4th 537, 542 (4th Cir. 2022) (internal citations and quotations omitted.)

### A.  Defendants Hill and Barone Are Public Officials

When a governmental worker is sued individually, or in his or her personal capacity, "our courts distinguish between public employees and public officers in determining negligence liability." *Hare v. Butler*, 99 N.C. App. 693, 699, 394 S.E.2d 231, 236 (1990). "Public officials are distinct from public employees in that officers perform discretionary actions requiring deliberation, decision and judgment, while employees perform ministerial duties that are absolute and certain." *Dempsey v. Halford*, 183 N.C. App. 637, 640, 645 S.E.2d 201, 204-05 (2007).

The test for "public official" requires that: 1) the position is created by the constitution or statutes; 2) the public official exercises a portion of sovereign power; and 3) the public official exercises discretion in his or her position, as opposed to ministerial duties. *See Isenhour v. Hutto*, 350 N.C. 601, 609, 517 S.E.2d 121, 127 (1999). North Carolina Courts have recognized school administrators, such as the superintendent and principals, as "public officials" for purpose of public official immunity in part because they perform discretionary acts requiring personal deliberation, decision, and judgment. *Mitchell v. Pruden*, 251 N.C. App. 554, 560, 796 S.E.2d 77, 82 (2017); *Farrell v. Transylvania County Board of Educ.*, 175 N.C. App. 689, 625 S.E.2d 128 (2006); *Gunter v. Anders*, 114 N.C. App. 61, 67-68, 441 S.E.2d 167, 171 (1994); *Petrillo v. Barnes-Jones*, 291 N.C. App. 62, 68, 894 S.E.2d 772, 777 (2023). In this case, Defendant Hill is the Superintendent of the Charlotte-Mecklenburg Board of Education, and Defendant Barone is a principal at Piedmont Middle School. (Dkt. No. 44, ¶¶ 10, 11.)

### B. Plaintiff Fails to Allege Facts Overcoming Public Official Immunity

A public official may not be held individually liable for mere negligence but may only be liable where his or her conduct is malicious, corrupt, or outside the scope of his or her authority. *Dalenko v. Wake Cty. Dep't of Human Servs.*, 157 N.C. App. 49, 56, 578 S.E.2d 599, 603-04 (2003); *Petrillo v. Barnes-Jones*, 291 N.C. App. 62, 68, 894 S.E.2d 772, 777 (2023). The Court presumes

public officials "discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law" absent evidence to the contrary. *Strickland v. Hedrick*, 194 N.C. App. 1, 10, 669 S.E.2d 61, 68 (2008) (internal quotations and citations omitted.) Any evidence presented to rebut this presumption "must be sufficient by virtue of its reasonableness, not by mere supposition. *Id.* A conclusory allegation that a public official acted willfully and wantonly is not enough, by itself, to withstand a motion to dismiss. *Farrell v. Transylvania Cty. Bd. of Educ.*, 175 N.C. App. 689, 695, 625 S.E.2d 128, 133 (2006). The facts alleged in a plaintiff's complaint must support such a conclusion. *Meyer v. Walls*, 347 N.C. 97, 114, 489 S.E.2d 880, 890 (1997); *Mitchell v. Pruden*, 251 N.C. App. 554, 561, 796 S.E.2d 77, 83 (2017) (The allegations stating defendant's actions were only meant to further his personal campaign to maliciously defame plaintiff were conclusory allegations and not sufficient to withstand a Rule 12(b)(6) motion to dismiss.)

"A defendant acts with malice when he wantonly does that which a man of reasonable intelligence would know to be contrary to his duty and which he intends to be prejudicial or injurious to another." *Mitchell v. Pruden*, 251 N.C. App. 554, 559, 796 S.E.2d 77, 82 (2017) (internal citations omitted). An act is wanton when it is done of wicked purpose, or when done needlessly, manifesting a reckless indifference to the rights of others. *R.A. v. McClenahan*, 122 F.4th 143, 145 (4th Cir. 2024). North Carolina courts have held that mere reckless indifference is insufficient to show a constructive intent to injure. *Wilcox*, 222 N.C. App. at 292).

To amount to constructive intent, "a plaintiff must show that the defendant's actions were so recklessly or manifestly indifferent to the consequences, where the safety of life or limb is involved, as to justify a finding of willfulness and wantonness equivalent in spirit to an actual intent." *R.A. v. Johnson*, 36 F.4th 537, 545-46 (4th Cir. 2022) (*quoting Wilcox*, 222 N.C. App. at 289.) *See, e.g., Brown v. Town of Chapel Hill*, 233 N.C. App. 257, 270, 756 S.E.2d 749 (2014) (no

<div align="center">11</div>

constructive intent to harm where, during an allegedly racially motivated arrest, officer's use of handcuffs caused plaintiff "great pain").

Plaintiff attempts to avoid this doctrine by repeatedly labeling Defendants' conduct as "malicious," "retaliatory," and "discriminatory," but these are legal conclusions, not facts. Any allegations made by Plaintiff only describe administrative actions within the scope of Defendant Hill and Barone's official duties and none to the extent that they acted with wicked purpose resulting in reckless indifference. Plaintiff describes conduct that is, at its core, personnel-management functions within the scope of official authority of supervisors, even if unfavorable to the employee. Such as forwarding information regarding criminal charges received about an employee to human resources; issuing statutory notices of recommendation for dismissal; participating in termination hearings by providing testimony.

Even Plaintiff's most serious allegation – that Defendants failed to discipline another employee after an altercation – amounts to, at most, disagreement with a personnel decision, not evidence of malice. Plaintiff's allegation that administrators tolerated an assault by failing to discipline the coworker does not establish that Defendants Hill and Barone themselves committed an assault or that they acted with the malice or corruption necessary to overcome immunity. A single workplace incident and an alleged decision not to discipline do not establish the "wicked purpose" required to pierce immunity afforded to public officials in the exercise of their duties. The allegations are consistent with the lawful exercise of discretionary authority in personnel matters. Plaintiff's conclusory characterizations of these actions as malicious or retaliatory are legal conclusions, not factual allegations that could support a rebuttal presumption of good faith from these public officials.

### III. PLAINTIFF FAILS TO STATE A 42 U.S.C. § 1983 CLAIM

12

### A. No Personal or Supervisory Liability

Plaintiff's § 1983 theory rests on supervisory liability, but his allegations fall far short. It is well settled that "supervisory officials may be held liable in certain circumstances for the constitutional injuries inflicted by their subordinates." *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). Under the first prong, the conduct engaged in by the supervisor's subordinates must be "pervasive," meaning that the "conduct is widespread, or at least has been used on several different occasions." *Id.* Furthermore, in establishing "deliberate indifference" under the second prong, a plaintiff "ordinarily…cannot satisfy his burden of proof by pointing to a single incident or isolated incidents…for a supervisor cannot be expected…to guard against the deliberate criminal acts of his properly trained employees when he has no basis upon which to anticipate the misconduct." *Slakan v. Porter*, 737 F.2d 368, 373 (4th Cir. 1984); *See also Randall v. Prince George's Cty.*, 302 F.3d 188, 206 (4th Cir. 2002). Such liability is not based on ordinary principles of *respondeat superior* but rather is premised on "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). "Deliberate indifference is a very high standard--a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999), *cert. denied*, 529 U.S. 1067 (2000); *see Farmer v. Brennan*, 511 U.S. 825, 835, 128 L. Ed. 2d 811, 114 S. Ct. 1970 (1994) (explaining that "deliberate indifference describes a state of mind more blameworthy than negligence" but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result"). Actions that in hindsight are "unfortunate" or even "imprudent" will not suffice. *Jones v. Wellham*, 104 F.3d 620, 627 (4th Cir. 1997).

In this case, Plaintiff points to a single alleged incident with a fellow teacher in attempt to apply liability to Defendants Hill and Barone and describes general dissatisfaction with administrative decisions. That is simply not sufficient to meet the standard required to attach supervisory liability.

### B. Plaintiff's Equal Protection Claim is Conclusory

The Equal Protection Clause of the Fourteenth Amendment prohibits states from denying any person equal protection of the laws. U.S. Const. amend. XIV, §1. This constitutional provision "is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). The equal protection requirement "keeps governmental decisionmakers from treating differently persons who are in all relevant aspects alike." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (citing *Nordlinger v. Hahn*, 505 U.S. 1, 10, 112 S. Ct. 2326, 120 L. Ed. 2d 1 (1992)). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001); *See also Frye v. Brunswick Cty. Bd. of Educ.*, 612 F. Supp. 2d 694, 707 (E.D.N.C. 2009) (upholding dismissal of plaintiffs' equal protection claims after explaining that "[a]s a threshold matter, plaintiffs have not sufficiently alleged that they were treated differently from other 'similarly situated' persons.")

Plaintiff's discrimination claims fail because he does not plead facts identifying any valid comparator under the controlling Fourth Circuit case law. A plaintiff is required to show that comparators are "similar in all relevant respects," including the same supervisor, the same

standards, and engaged in the same conduct without differentiating circumstances. *Spencer v. Va. State Univ.,* 919 F.3d 199, 207-08 (4th Cir. 2019).

In this case, Plaintiff repeatedly asserts "disparate treatment" but fails to allege any specific comparator, any similar circumstances, or any facts showing intentional discrimination. First, Plaintiff points to the disparate treatment in discipline between himself and Rachel Tapia. *See* Dkt. No. 44, ¶¶ 25, 74. However, the circumstances are not similar: Plaintiff's termination was based on, as he alleges, criminal charges in Kentucky and South Carolina, while Rachel Tapia was allegedly involved in an assault. Second, Plaintiff alleges different treatment of African-American male teachers in the areas of discipline and performance evaluations. However, he cites to his alleged complaints of different treatment of African-American children, not areas of discipline and performance evaluations. Dkt. No. 44, ¶ 34. To note, Plaintiff also complains that Defendant Board failed to consider his "exemplary teaching record" in the termination hearing. Dkt. No. 44, ¶ 31. Third, without identifying a single comparator, Plaintiff alleges similarly situated non-African American employees were treated more favorably than Plaintiff "under similar circumstances" regarding the basis for his termination. Dkt. No. 44, ¶ 55(f), 56. That is simply not sufficient to overcome a sufficiency challenge, and such omissions are fatal.

The Complaint should also be dismissed because it lacks factual allegations that support Defendants Hill and Barone were deliberately indifferent based on Plaintiff's race and gender. "To be sure, the original complaint throws in words and phrases such as 'deliberate indifference,' 'malicious,' 'outrageous,' and 'wanton' when describing the conduct of the officers. The presence, however, of conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support a finding of deliberate indifference. *Young v. City of Mount Rainier*, 238 F.3d 567, 577 (4th Cir. 2001).

### C. Plaintiff's Due Process Claim Fails on its Face

The Supreme Court has framed the minimum fundamental requirement for due process as an opportunity to be heard "at a meaningful time and in a meaningful manner." *Matthew v. Eldridge*, 424 U.S. 319, 333 (1976). In termination of a public-school teacher, due process requires adequate notice, a specification of the charges against a party, the opportunity to confront the witness, and the opportunity for a party to be heard in his or her own defense. *Grimes v. Nottoway Cnty. Sch. Bd.*, 462 F.2d 650, 653 (4th Cir. 1972).

Here, Plaintiff acknowledges that he received notice of the charges against him and was provided an opportunity to confront witnesses and present his own defense. *See* Compl. ⁋ 28-31. Plaintiff further acknowledges that Defendant Board held a termination hearing in which testimony was permitted. In the context of a board of education hearing regarding termination in a personnel matter, hearsay evidence does not inherently violate due process, as such hearings are not required to adhere strictly to the evidentiary standards applicable in judicial proceedings. *See* N.C. Gen. Stat. § 115C-325.7(4) ("Rules of evidence shall not apply to a hearing under this subsection, and the board may give probative effect to evidence that is of a kind commonly relied on by reasonably prudent persons in the conduct of serious affairs.") In *Satterfield v. Edenton-Chowan Board of Education*, 530 F.2d 567 (1975), the Fourth Circuit held that the use of hearsay testimony during an informal hearing did not constitute a due process violation. The court emphasized that administrative hearings are characterized by flexibility and informality, and hearsay evidence may be admissible if it provides the employee with an adequate opportunity to respond. Accordingly, Plaintiff's due process claim fails.

### D. Qualified Immunity Requires Dismissal

Even if Plaintiff had pleaded a constitutional violation, which he has not, Defendants Hill and Barone are entitled to qualified immunity. Qualified immunity is an affirmative defense that shields government officials performing discretionary functions from personal-capacity liability for civil damages, insofar as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. An individual defendant is entitled to qualified immunity from a 42 U.S.C. § 1983 claim if two conditions are met: (1) the defendant's conduct did not violate a statutory or constitutional right, or (2) the right allegedly violated was not "clearly established" at the time of the conduct. *See Ridpath v. Bd. of Governors Marshall Univ.*, 447 F.3d 292, 306 (4th Cir. 2006). School officials performing discretionary functions are entitled to qualified immunity unless they knew or reasonably should have known that the action taken within the sphere of official responsibility would violate the constitutional rights of the person affected, or if they took the action with the malicious intention to cause a deprivation of constitutional rights or other injury. *Wood v. Strickland*, 420 U.S. 308, 322 (1975).

In this case, Plaintiff's allegations against individual defendants do not overcome qualified immunity. Plaintiff alleges he was terminated based on arrests and charges that were subsequently dismissed or resulted in acquittal. While the right to be free from discrimination based on race or gender is clearly established, the right to be free from termination based on arrests and/or charges, as opposed to convictions, is not clearly established. Defendant Hill's decision to recommend Plaintiff's dismissal based on arrests was a discretionary supervisory employment decision. School superintendents have broad discretion in making personnel decisions, including decisions to recommend termination. Plaintiff's Complaint does not allege that Defendant Hill violated a ministerial duty or a clearly established policy; rather, it alleges that she exercised discretion in deciding to recommend the termination of Plaintiff based on arrests and charges. The ultimate

17

decision to terminate Plaintiff was made by his employer, Defendant Board. There is no authority that establishes a clearly defined constitutional right to remain employed despite multiple arrests and charges, or to delay employment decisions until final disposition of charges.

## IV.     PLAINTIFF'S PRETEXT THEORY FAILS AS A MATTER OF LAW

Plaintiff's primary theory is that Defendants' reliance on his nine arrests to support termination was "pretextual" because the charges were later dismissed or resulted in acquittal. This argument fails under well-settled law. The Fourth Circuit makes clear that pretext must be evaluated based on the employer's knowledge and belief at the time of the decision, not based on hindsight. *Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000). "The Court evaluates the legitimacy of the decision maker's decision based on the information available to him or her at the time of the decision." *Jenks v. City of Greensboro*, 495 F. Supp. 2d 524, 529 (M.D.N.C. 2007) (internal citations omitted). "It is only the decision maker's belief at the time that the decision is made that is the relevant inquiry -- not whether the information is later proven to be false. The fact that Plaintiff believes the decision was poorly made and based on erroneous factors is irrelevant. Negligence or poor judgment do not establish intent to discriminate." *Id*. Thus, even if charges are later dismissed, that fact does not retroactively render the employer's prior reliance unreasonable or discriminatory.

In this case, Plaintiff acknowledges he was suspended with pay and eventually terminated due to "unrelated incidents involving arrests in Kentucky and South Carolina…" and "failures to report such arrests within a 5-day window." Dkt. No. ¶ 7. Plaintiff specifically relies on the fact that the subsequent official disposition of the Kentucky charges were dismissals on February 2 and 13, 2025, and acquitted on the South Carolina second-degree harassment charges on September 10, 2025, over a year after Plaintiff's termination. Dkt. No. ¶ 29. Plaintiff admits there were multiple

arrests in two different states, at least one being second-degree harassment, and Defendants relied on them.

Lastly, Plaintiff relies on timing, arguing that disciplinary action followed his complaint. However, the Fourth Circuit has held that temporal proximity alone is insufficient to establish pretext. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 127 (4th Cir. 2021). Here, Plaintiff's own allegations show intervening events, namely his arrests, which provide a legitimate, non-retaliatory explanation.

## V. PLAINTIFF FAILS TO STATE A VIABLE 42 U.S.C. 1981 CLAIM

Section 1981 claim is comprised of three elements: first, that the plaintiff is a member of a racial minority; second, that the defendant acted with an intent to discriminate against the plaintiff on the basis of race; and, third, that the defendant's race discrimination concerned plaintiff's "making, performance, modification, and termination of contracts" or the "enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Habash v. City of Salisbury*, 618 F. Supp. 2d 434, 442 (D. Md. 2009). In this case, Plaintiff alleges violations of 42 U.S.C. § 1981 in Counts I, III, and IV without any allegations as to a contractual relationship.

### CONCLUSION

Plaintiff's Second Amended Complaint spans nearly thirty pages and asserts numerous federal and state claims. Yet, despite its length, it fails to meet the basic pleading standards required under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Even accepting Plaintiff's allegations as true, the Complaint does not plausibly allege entitlement to relief. Instead, it relies on conclusory assertions of discrimination, speculation regarding motive, and retrospective disagreement with personnel decisions. For the reasons stated herein, Plaintiff's Second Amended Complaint should be dismissed with prejudice.

19

This the 5th day of June 2026.

<div style="margin-left:50%">

/s/ Oksana Cody
Oksana Cody N.C.
State Bar No. 45393
Charlotte-Mecklenburg Board of Education
600 E. Fourth St., 5th Floor
Charlotte, NC 28202
Phone: (980) 343-6228
Email: Oksanak.cody@cms.k12.nc.us
*Attorney for Defendants Board, Hill, and Barone*

</div>

20

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1, I hereby certify that the foregoing Memorandum in Support of Defendants' Motion to Dismiss complies with the word limit.

I further certify that the foregoing Memorandum in Support complies with this Court's Order regarding "Use of Artificial Intelligence."

<div align="right">

/s/ Oksana Cody
Oksana Cody
N.C. State Bar No. 45393
Charlotte-Mecklenburg Board of Education
600 E. Fourth St., 5th Floor
Charlotte, NC 28202
Phone: (980) 343-6228
Email: Oksanak.cody@cms.k12.nc.us
*Attorney for Defendants Board, Hill, and Barone*

</div>

21

<div align="center">**CERTIFICATE OF SERVICE**</div>

This is to certify that on this date the undersigned filed the foregoing **MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** using the Court's CM/ECF system, which will send notification of such filing to any CM/ECF participants.

Sharika M. Robinson,
The Law Offices of Sharika M Robinson, PLLC
10230 Berkeley Place Drive, Suite 220
Charlotte, NC 28262
*Counsel for Plaintiff*

This the 5th day of June 2026.

/s/ Oksana Cody
Oksana Cody
N.C. State Bar No. 45393
Charlotte-Mecklenburg Board of Education
600 E. Fourth St., 5th Floor
Charlotte, NC 28202
Phone: (980) 343-6228
Email: Oksanak.cody@cms.k12.nc.us
*Attorney for Defendants Board, Hill, and Barone*